UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

*Electronically Filed*

| | |
|---|---|
| **DAVID WILSON, as Administrator of the Estate of Lisa Noble, Deceased, Plaintiff** | |
| | C.A. No.: 6:17-00157-CHB-HAI |
| VS. | OBJECTION AND RESPONSE OF PLAINTIFF TO DEFENDANTS' MOTION FOR LEAVE TO TAKE DEPOSITIONS OF SELENA MOORE, TAMMY SAYLOR AND DR. DAVID DOUGLAS, OR IN THE ALTERNATIVE, FRCP 37 MOTION TO PROHIBIT TESTIMONY AND/OR USE OF STATEMENTS BY THE AFOREMENTIONED |
| **BEACON TRANSPORT, LLC and TERRAN COOPER, Defendants** | |

Comes the Plaintiff, by counsel, in response to Defendants' Motion For Leave to Take Depositions of Selena Moore, Tammy Saylor, and Dr. David Douglas, or in the Alternative, FRCP 37 Motion to Prohibit Testimony and/or Use of Statements by the Aforementioned (Docket No. 93), stating the following Objection and Response per the Civil Minutes at Docket No. 90:

**I. The Motion at Bar is Not Properly Before this Court.**

Defendants failed to comply with the Orders of this Court to place its Motion for Leave to depose three witnesses in this case some roughly six (6) months after the fact witness discovery deadline passed before the Court. The Motion should be denied given that:

    A.    A Motion was permitted filed per the Orders contained within the Civil Minutes issued following the September 25, 2018 teleconference with the Court (Docket No. 90). That Motion was precisely limited by the Court. The Civil Minutes ordered: "Defendants' request to take certain fact discovery depositions after the April 2, 2018 fact discovery deadline is DENIED. <u>However, on or before October 10, 2018, Defendant is granted leave to file a motion to take the depositions of Selena Moore, Tammy Saylor, and Dr. David Douglas</u>." *Emphasis added*. No Motion for addressing the "alternative relief" of sanctions was permitted.[1]

    B.    Attached is **<u>Exhibit A – Defense Dispute Submission</u>** in which the defense summarized the issues to be brought before the Court in the teleconference of September 25, 2019. Nowhere within the defense's submission is any FRCP 37 sanction requested or addressed.

    C.    The pending Motion was not filed prior to the expiration of the Ordered deadline of April 2, 2018. This issue was raised for Motion in Mid-September, 2018. It is in no way timely or in compliance with the scheduling Order. The Scheduling Order entered August 14, 2017 at Docket No. 12 states:

---

[1] This is not the first occasion with respect to Defendants' pending discovery Motion that this Court's Orders were violated in regard to this process. The Court's Order at Docket No. 89 was initially violated with the defense's submission of <u>Exhibit A</u>. That submission exceeded the number of pages permitted to summarize this dispute. The Court addressed this issue and accepted the submission with caution to counsel as to the local rules governing discovery disputes and Motions.

2

1(e). "Fact discovery shall be completed by April 2, 2018. No later than October 15, 2018, the parties shall complete all discovery, including fact and expert discovery".

*The Order further states:*

"[n]o extensions of the deadlines set in this order, or those contained in the separate pretrial conference order also entered this date shall be granted unless an appropriate motion is filed prior to expiration of the deadline in question, and upon a showing of good cause beyond the control of counsel in the exercise of due diligence".

## II. No Good Cause Beyond the Control of Counsel Exists – These Witnesses Were Known by the Defense prior to Litigation and Their Roles Were Publicly Documented.

The Motion before the Court fails to show any good cause beyond the control of counsel in the exercise of due diligence in the prosecution of this case. As a result, the Motion should be denied. The record of this matter documents that each of the witnesses at bar were known to the defense, as was their specific role in the tragedy in which Ms. Noble lost her life:

    A.    Tammy Saylor and Selena Moore were listed as witnesses on the police report of this crash at P. 5, attached herein as **Exhibit B – Police Report Naming Moore and Saylor.**

    B.    The claim made by Defendants on page 2 of the pending Motion that Selena Moore's witness statement did not allude "in any way to supporting a punitive damage claim and or pain and suffering claim" is untrue. Her witness statement was taken in writing by the Kentucky State Police on the date of the crash as part of the official investigation of this crash, and that statement is attached hereto as **Exhibit C – Moore KSP Witness Statement**. In

this witness statement, which the defense also possessed prior to close of fact discovery in April of 2018, Ms. Moore stated in pertinent part: "I was driving on I-73 towards Corbin ahead I seen and semi-trailer stopped in the middle of the road, when a car came driving about 60-65 mph toward that semi. The driver did not brake until right on the semi, she whipped the wheel when she did she clipped the truck**. My girlfriend and I immediately pulled to the shoulder an ran toward the wrecked car. Upon arriving to the scene we managed to get the door open. My g/f Tammy Saylor covered her with a blanked and took her pulse, she was breathing, but sort of a gurgle. Tammy talked to her until paramedics arrived. The truck driver had no flashers on, no triangles. He put the equipment out after the collision. He began videoing the accident and arguing with paramedics. Being very disrespectful, especially in these circumstances.**"

    C. That claim made by the Defendants on page 2 of the pending Motion asserting that Tammy Saylor's witness statement did not allude "in any way to supporting a punitive damage claim and or pain and suffering claim" is also untrue. That witness statement was also taken in writing by the Kentucky State Police on the date of the crash as part of the official investigation of this crash. That statement is attached hereto as **Exhibit D – Saylor KSP Witness Statement**. In her witness statement, which the defense possessed prior to close of fact discovery in April of 2018, Ms. Saylor stated in pertinent part: "I was travelling on I-75 towards Corbin when we came up on a stalled semi truck stopped in the left lane with no flashers or triangles. A white car passed us going around 60 mph. The car didn't break until right upon the semi. The car did a small steer the the right clipped the semi**. We pulled over I ran to the victim took her pulse and she was breathing. I covered her up**. The truck driver then turned

4

on his flashers and put out triangles. 911 was called EMS and officers arrived within minutes. **The truck driver during this time was videoing and saying things to EMS".**

    D. The statement on Page 3 of the defense brief before the Court that the KSP statements of Ms. Saylor and Ms. Moore are statements that "<u>dealt with the speed and position of the vehicles in issue</u>" materially omits reference to content that is at the very heart of this dispute[2]. That omitted content from these two KSP witness statements details the suffering that Ms. Noble endured as she struggled for her life after the crash and before EMS arrived: *the taking of a pulse, Ms. Saylor was talking to Ms. Noble after the crash, Ms. Noble was having gurgled breathing, witnesses got Ms. Noble a blanket.* That omitted content also documents the condemnable conduct of Defendant truck driver Cooper at the scene upon which a claim for punitive damages is partly based: *he was witnessed videotaping during this rescue and disrespectfully arguing with Ms. Noble's paramedics as she suffered towards her impending death.* The Defendants knew the true meaning and materiality of these witnesses to this case and their defenses from the moment they received the police report in this case. They most certainly knew this materiality upon the first full read of Ms. Saylor and Ms. Moore's KSP statements, as well as when the Motion at bar was both drafted and filed.

    E. As to additional *actual knowledge* of Ms. Saylor and Ms. Moore's roles in this case, the <u>Defendants</u> identified Ms. Saylor and Ms. Moore on their FRCP 26 disclosures as having "knowledge concerning the accident" at Docket no. 19-1 filed of record on August 24, 2017 – roughly 8 months prior to the close of fact discovery.

    F. Plaintiff disclosed in Interrogatory Answers, pertinent portions of which are attached as **Exhibit E – Plaintiff's Int Answers** filed on September 25, 2017 that: Ms.

---

[2] This is the case despite that counsel included copies of the Saylor and Moore statements collectively as an exhibit to the pending Motion. For ease of the Court in review, they have been separated as separate exhibits hereto.

Noble suffered physical pain, fright and mental/emotional suffering before her death from injuries sustained in the crash. *See* <u>Response to Int. No. 2</u>. Tammy Saylor and Selena Moore, who are listed on the collision report saw the collision and they were with Lisa after the collision occurred. They would have discoverable facts regarding this matter. *See* <u>Response to Int. 18</u>. Plaintiff explained that Lisa Noble was not killed upon impact. She was still breathing after the collision when persons who stopped tried to help her and prayed with her, she responded when she was urged to breath. She later died at the hospital. <u>See Response to Int. No. 26</u>. Plaintiff also made very specific pleadings of fact in her Complaint[3]. (Docket No. 1). The claim that Plaintiff attempted to conceal parts of its theory on damages is disproven by the record.

    G. Dr. David Douglas was identified in medical records produced in discovery by Plaintiff with Plaintiff's September 25, 2017 discovery responses – notably a year to date before the recent telephonic conference with His Honor concerning this dispute. This witness was Ms. Noble's attending physician on her date of death. Defendants had the records of Dr. Douglas' care for well over six (6) months prior to the close of fact discovery in April of 2018. No due diligence has been shown concerning meaningful and available efforts to depose Dr. Douglass in the Defendants' Motion. Dr. Douglas' employer could have been deposed to obtain his address information. Skip tracing could have been performed. Medical licensure

---

[3] Plaintiff specifically pled allegations of fact at paragraphs 4.52 through 4.55 that: Ms. Noble could hear subsequent to the collision. Ms. Noble could see subsequent to the collision. Ms. Noble responded to direction to breath subsequent to the collision. Ms. Noble suffered conscious pain and suffering subsequent to the collision. The Complaint (Docket No. 1) specifically further pled at paragraphs 4.56 through 4.62 that: following the collision, Mr. Cooper exited his vehicle holding a phone. That when Mr. Cooper exited his vehicle, he instructed persons attempting to assist Ms. Noble to get away from her and her vehicle. When Mr. Cooper instructed persons attempting to assist Ms. Noble to get away from her vehicle, Ms. Noble was alive within it. When Mr. Cooper instructed persons attempting to assist Ms. Noble to get away from her vehicle, at least one of those persons was praying with Ms. Noble while awaiting the arrival of an ambulance. When Mr. Cooper exited his vehicle after the crash, he claimed that Ms. Noble caused the collision to persons attempting to assist Ms. Noble. This pleading by Plaintiff put Defendant on notice at the outset of this case of the issues of conscious pain and suffering and the claims against Mr. Cooper for his conduct while Ms. Noble's attempted rescuers prayed with and comforted her.

contact information also could have been obtained. This witness could have been deposed anywhere in the Country. There are certainly other efforts that could have been, but were not elected undertaken by the defense to depose this witness.

### III.  Due Diligence Was Neither Shown Nor Exercised by the Defendants.

No due diligence has been shown relative to the pursuit of these depositions:

A.     Defendants did not state specific actions it took to pursue depositions of Ms. Saylor, Ms. Moore and Dr. Douglas. There is no detail as to what was done in pursuit of this discovery between February and through the expiration of the fact discovery deadline in Mid-April 2018 in their Motion.  Calls were allegedly made, with no detail disclosed to the Court as to who made them, to where they were made, or how many calls were made. Detail disclosing the good faith diligence undertaken to depose these witnesses is missing from the record.

B.     There is no substantive detailing of actions of an investigator to track these witnesses and talk to them in 2018 after fact discovery closed in the record upon which this Motion is based.  There is only a bald claim that an investigator was hired, without further explanation of what that investigator did or did not do. There is no supporting investigator affidavit. No notice of deposition or subpoena has been produced for any deposition that the defense attempted to set prior to the running of fact discovery. There is no affidavit or meaningful accounting in support of these bald assertions of actions taken that provide a factual basis for a legal finding of good cause from anyone, including counsel. The defense has shown nothing as having been done with respect to any attempt to depose Dr. Douglas in its Motion during fact discovery.  Given the foregoing, no good cause can exist for the taking of these depositions.

**IV. Excess Disclosure Was Made of Witness Materials; Defendants Did not Act Timely.**

Plaintiffs made disclosure of investigative interview materials and notes relating to Ms. Saylor and Ms. Moore on June 19, 2018 and appropriate expert disclosures were timely made.

A,     Plaintiff's experts cited facts relied upon in regard to witnesses of the accident in their expert reports. *See the 321 pages of documents field herewith in pertinent part of those disclosures as* **Exhibit F - Plaintiff's Expert Disclosures.** As opposed to presenting expert files and materials in deposition after defense disclosures were made, so as to provide information Plaintiff had concerning the witnesses in issue, Plaintiff supplemented Rule 26(A) disclosures in this case supplying its actual work product of investigator interviews and investigative notes. Plaintiff did so *fifty-seven (57) days* prior to the date that the defense expert reports were due in this case. The materials in issue were trial preparation materials created by investigators at the request of the Plaintiff in anticipation of litigation – work product. Plaintiff still voluntarily supplemented its disclosures with the statements of these witnesses so as to give the materials relied upon by the experts to the defense *in toto* as opposed in the manner in which they were cited in the relevant expert reports[45].

---

[4] To the extent that the Defendant may be arguing that Plaintiff failed to formally supplement FRCP (26)(A) disclosures by publishing its work product of investigative interviews and notes to the defense, the docket reflects that Plaintiff duly filed a notice of Supplementation of its disclosures in the record at Docket No. 71 on June 19, 2018.

[5] The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. See Hickman v. Taylor, 329 U.S. 495, 510–14, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Work product "protects 'the files and the mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways [,]' prepared in anticipation of litigation." A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 146 (2d Cir.) (quoting Hickman v. Taylor, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947)), cert. denied, *428 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994). To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work product, we ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. United States v. Roxworthy, 457 F.3d 590,

B.     The Defendants' delay in bringing this matter before the Court is grounds for denial of the relief requested alone.  The delay involved in the Motion before the Court does not simply relate to the April fact deadline. Had there had been diligent efforts to depose these witnesses, the Motion in issue should have been brought earlier than it was – as opposed to AFTER all expert witnesses were disclosed in the case on August 15th. Defendants could have: moved for the discovery in issue upon receipt of Plaintiff's disclosures and the materials in June, moved for an extension of trial deadlines at that time, or moved to hold its disclosures and further expert discovery in abeyance pending ruling on whether it could take supplemental fact discovery then. They did not. Instead, Defendants chose to send their experts what counsel chose of the witness interviews and investigator notes provided for use in their reports. This case has now proceeded through extensive and expensive expert depositions (save for one to be completed on October 22nd in accordance with Orders at Docket No 90).   As a result of its own delay, the Defendants are now improperly attempting to move *In Limine* against eye witnesses and expert witnesses in this matter under the guise of a FRCP 37 dispute.

## V. Conclusion.

The Motion at bar should fail.  It is not properly before this Court. It fails to show any good cause beyond the control of counsel in the exercise of due diligence in the prosecution of this case as to why the discovery sought was not timely taken. The claim that there was no awareness that Ms. Saylor and Ms. Moore's testimony would support claims for pain and suffering and punitive damages claims of record does not prove true *whatsoever*. Defendants did nothing material in pursuit of the deposition of Dr. Douglas. Last, no harm accrued to the

---

594 (6th Cir.2006). All statements and notes in issue were created in anticipation of this litigation, and or and in regard to this litigation.

Defendants as a result of any action of the Plaintiff; the defense's own inaction and delay are at the heart of their concerns. For the reasons set forth above, it is respectfully requested of the Court that the Court deny the Motion at bar, entering the Order filed herewith providing this relief.

Respectfully submitted,

  /s/Timothy D. Lange
Timothy D. Lange
BENSON, RISCH & LANGE, PLLC
401 W. Main Street, Suite 2150
Louisville, Kentucky 40202
Telephone: (502) 583-8373

D. Randall Jewell
JEWELL LAW OFFICE, PLLC
P.O. Drawer 670
Barbourville, Kentucky  40906
Telephone:  (606) 546-9714

Billy J. Taylor
TAYLOR LAW OFFICE, PLLC
110 Knox Street, Suite A
Barbourville, Kentucky 40906
Telephone:  (606) 545-0224

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE**

It is hereby certified that on the foregoing was filed October 16, 2018 with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/   Timothy D. Lange
TIMOTHY D. LANGE