**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

***Electronically Filed***

| | |
|---|---|
| **DAVID WILSON, as Administrator of the** **Estate of Lisa Noble, Deceased, Plaintiff** | **C.A. No.:  6:17-00157-CHB-HAI** |
| **VS.** | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS FOR INTENTIONAL DESTRUCTION AND FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION** |
| **BEACON TRANSPORT, LLC and** **TERRAN COOPER, Defendants** | |

Comes Plaintiff pursuant to Judge Ingram's Order at Docket No. 129, by counsel, in support of Plaintiff's Motion for Sanctions for Intentional Destruction and Failure to Preserve Electronically Stored Information against Beacon Transport, LLC and Terran Cooper, stating:

**INTRODUCTION**

This case concerns a November 5, 2017 crash between a white Volkswagen Jetta driven by Ms. Lisa Noble and a tractor-trailer driven by Mr. Terran Cooper.  Mr. Cooper was driving the tractor-trailer on behalf of his employer Beacon Transport, LLC (hereinafter "Beacon").  Beacon owned the tractor-trailer that Mr. Cooper drove.  At the time of the crash, Ms. Noble was on her way to pick up her grandchildren.  Her grandkids lived with her, and they were to be released early from school because of expected inclement weather.

Ms. Noble was in the left "passing" lane of travel as she drove up a long hill in a two-lane section of Northbound I-75 near Williamsburg. The Beacon truck driven by Mr. Cooper was in the same left "passing" lane of travel ahead of Ms. Noble. Prior to the crash, Mr. Cooper was purportedly attempting to change lanes from the left lane to the right as he travelled up a long hill. There was a vehicle driven by Mr. Michael Anderson positioned between Ms. Noble's vehicle and the Beacon truck that, moments prior to the crash, changed lanes from the left lane to the right lane ahead of Ms. Noble as they drove uphill towards the Beacon truck. When Ms. Noble appreciated the presence of the slowed or stopped truck hazard, she attempted the same evasive lane change as did Mr. Anderson. Tragically, she did not have enough time or space for that evasive maneuver to succeed. The front driver's side of Ms. Noble's Jetta struck the right side of the rear underride guard of Defendant Cooper's slow-moving or stopped trailer. The roof of Ms. Noble's Jetta was sheared away amidst significant other damage to the driver's side of the Jetta. Ms. Noble suffered multiple injuries in the crash. Other drivers stopped and comforted her after the crash; Mr. Cooper got out and took pictures and video of these Good Samaritans attending to Ms. Noble. Ms. Noble died at the hospital later that day from her injuries.

Prior to the crash, Mr. Cooper had stopped or slowed the Beacon tractor-trailer to 15mph or under according to the various experts in the case. He was in the left (fast) lane of travel. There is a dispute as to whether the tractor-trailer was displaying its hazard lights at the time of the crash, with multiple non-party witnesses stating no lights were activated, and Mr. Cooper alone claiming they were. It is undisputed that there was no traffic in the left (fast) lane ahead of Mr. Cooper to cause him to stop or slow as he did. Rather, Mr. Cooper claimed he was attempting to change lanes into the slow lane at the time of the crash. Mr. Cooper claims that he

could not safely make his lane change prior to the crash because traffic was passing and going around him in the right lane as he waited to change lanes.

Plaintiff alleges, among other causes of action in the Complaint, that the crash was a direct result of Mr. Cooper's negligent operation of Beacon's tractor trailer, creating a roadway hazard that proved fatal to Ms. Noble. Defense reconstructionist Ken Agent testified that the Beacon truck created a dangerous situation with its speed as Mr. Cooper operated it in the fast (left) lane of the interstate. Mr. Cooper was an employee of Beacon at the time of the crash, and Beacon has vicarious liability for his actions. Damages sought from these Defendants include an award for the conscious pain and suffering of Ms. Noble, in addition to economic damages for her wrongful death.

Material electronic evidence pertaining to both liability of the Defendants and damages for Ms. Noble's conscious pain and suffering was intentionally and maliciously destroyed by the Defendants for the purpose of gaining unfair advantage in the defense of this case.  Based upon the testimony of the Defendants and witnesses in this case Mr. Cooper captured highly material video and photographs of:

      1)      traffic conditions prior to and at the time of the crash,

      2)      the crash,

      3)      the scene of this crash prior to the arrival of emergency responders, and

      4)      Ms. Noble's condition after the crash.

Based upon the testimony of Beacon personnel, it is further established in the record that Beacon permitted electronic communications between it and Mr. Cooper to be destroyed due to the passage of time despite specific demand by undersigned counsel that it preserve this

electronic communications information – maintained in a system known as Omnitracs (and also referred to in the case using a former name for the system of Qualcomm).

Defendants maliciously and intentionally destroyed and purposely failed to preserve electronic information in violation of Rule 37(e). This Motion seeks sanctions: this conduct persisted from the inception of this case in early 2017 through the close of Plaintiff's discovery against the defense.  The documented timeline that follows shows a pattern of suspect conduct and intentional misdeeds perpetrated to gain advantage in the defense of this litigation.

## FACTS

As the timeline that follows shows, evidence was requested to be preserved for this anticipated litigation within 30 days of this crash. Efforts were made to exchange documents in the interests of a possible pre-suit resolution of the claim. Those efforts failed.  Suit was filed when the case did not resolve.  The need for preservation and downloading of electronically stored information was then jointly reported to the Court. A Protective Order ultimately was entered for electronics used in the Beacon truck that Plaintiff sought to download and inspect. Legal resources were spent in pursuit of electronic information sought preserved. That information included digital photographs, drive cam video, hand held camera scene video, and electronic communications between Beacon and Mr. Cooper utilizing the Beacon truck's Omnitracs/Qualcomm system. The Omnitracs system is a computer that is added in the cab of the truck and one use of it is as the means of communication between the driver and Beacon when the driver is on the road, it also has GPS data, electronic driver hours of service data, and

other functions.[1] Beacon mandates that drivers use Omnitracs to communicate with it – it is akin to email.

For the Court's ease in following the series of events leading up to the Motion at bar, below is an annotated timeline:

**January 5, 2017**      **Date of Collision – Mr. Cooper is Witnessed Videotaping Scene.**
- Mr. Cooper admitted taking photographs with his phone at the scene.
- Witness Tammy Saylor gives a statement to KSP that the truck driver was "videoing". Saylor Affidavit, p. 4 at Docket No. 123-1.
- Witness Selena Moore likewise witnessed that "the truck driver was videotaping us while we tried to help and comfort Lisa". *See* Moore Affidavit at Docket No. 123-2 at p. 2 and p. 4. Ms. Ms. Moore and Ms. Saylor are referring to Mr. Cooper whom she witnessed videotaping her as she tried to comfort Ms. Noble.

**Jan 6-7, 2017**        **Beacon Employee Lisa Milom downloads electronics in Cooper Truck.**
- Beacon downloads Mr. Cooper's phone the first time.
- Mr. Cooper claims Beacon downloaded all electronics in his truck, dash cam, ECM, computer, his GPS, and his Omnitracs unit.
-
**February 3, 2017**     **Tim Lange sends preservation letter to Beacon and Mr. Cooper.**
- Receipt confirmed by Beacon Safety Director Jeff Knittel who provided it to Counsel Judd, attached as Exhibit 1.

**February 9, 2017**     **Counsel Harlan Judd sends representation reply spoliation letter.**
- Confirms representation of Defendants; demands preservation of Lisa Noble phone, photographs, videos, computer media, databases, recordings of the Noble vehicle, *etc*., attached as Exhibit 2**.**

**February 28, 2017**    **Plaintiff e-mails Counsel Judd – seeks 3/3/18 Cooper phone download.**

**March 3, 2017**        **Tractor Trailer inspected at Beacon facility in Tennessee.  Cooper phone and cameras not produced for inspection.**

**May-August, 2017**     **Counsel Judd oversees incomplete download of Cooper phone.**

**May 17, 2017**         **Counsel Judd e-mails select pre-suit truck photos to Tim Lange that included 10 black and white photocopies of pictures of Beacon's No photographs of the Noble Vehicle.**

---

[1] The electronic fleet management system in issue is called Omnitracs, and is often also called Qualcomm in the industry. The names were used interchangeably in the record. The history is that Qualcomm owned Omnitracs and sold it a few years ago.

- Copies of these photographs are attached as Exhibit 3.

**June 19, 2017**          **Complaint Filed.**

**August 3, 2017**         **Parties' Joint Planning Conference Report at Docket No. 39**.
  - Section 6 identifies electronics needing download to the Court.

**August 8, 2017**         **Plaintiff sends Requests for Admission, Interrogatories and Requests for Production of Documents sent to Defendants.**

**August 14, 2017**        **Scheduling Order at Docket No. 12 & Pretrial Order at Docket No.13.**

**August 18, 2017**        **Omnitracs (Qualcomm) subpoena issued by Plaintiff to produce all records at Docket No. 17.1.**

**September 7, 2017**      **Beacon's Response to Request for Admissions filed at Docket No. 22.**
  - Beacon denies that Mr. Cooper took photographs of Ms. Noble's vehicle with her still inside of it at Request No. 12.

**September 7, 2017  Mr. Cooper's Response to Request for Admissions at Docket No. 23.**
  - Mr. Cooper denies that he took photographs of Ms. Noble's vehicle with her still inside of at Request No. 12.
  - Mr. Cooper denies taking video of the Noble vehicle with Ms. Noble still inside of it at Request No. 13.

**September 18, 2017  Omnitracs Subpoena Response – No Data Retained for Time Period,** attached as Exhibit 4.

**October 17, 2017**       **Defendant Cooper's and Beacon's Answers to Interr. & Requests for Production filed at Docket No. 28 and 29 Respectively.**
  - All data in issue in this motion is requested.
  - A response of "See Composite Exhibit A" was made to these requests relating to electronic information.  Composite Exhibit A did not contain Omnitracs communications data, any video or any photographs depicting the Noble vehicle. Claimed no duty to notify third parties to preserve Beacon's Omnitracs data.

**January 19, 2018**       **Rule 30(B)(6) deposition notice for Beacon Corporate Representative filed at Docket No. 30**
  - Requires production of the original of all electronic files preserved, including Omnitracs electronic communications, photographs and video.

**January 30, 2018**       **Counsel Lange email to Counsel Judd requesting supplementation of Beacon Discovery Responses, including all data for Omnitrac systems, communications, and camera systems.** Attached as Exhibit 5.

6

| | |
|---|---|
| **February 2, 2018** | **Plaintiff's Notice to inspect electronics including Cooper's phone on 2/22/18 at Docket No. 39.** |
| **February 8, 2018** | **Mr. Cooper factory resets his phone, irretrievably deleting all data.** |
| **February 15, 2018** | **Counsel Judd requests move of electronics inspection to Cooper Depo.** |
| **February 18, 2018** | **Amended Notice of Inspection filed for electronic0 at Docket No. 44.** |
| **February 19, 2018** | **Agreed Protective Order Re: Electronic Discovery executed for attempted phone download at Docket No. 47.** |
| **February 19, 2018** | **Cooper Deposition & Inspection of Electronics – phones, camera, etc.** |
| | - Only the Cooper phone was produced; it was discovered reset. |
| **February 26, 2018** | **Depositions of Beacon's Corporate Representatives Stan Pritchett, Randy Cummins, Jeff Knittel and Billie Jo Little with production date for requested  Production of Original Documents/Things including all Electronics at Docket No. 30.** |
| | - No electronics, phones, cameras, computers produced. |
| **February 28, 2019** | **Counsel Judd sends CD with copy of incomplete download he had made by undisclosed person of selected picture files from Mr. Cooper's phone.** |

## ARGUMENT

Rule 37(e) permits the Court to assess an appropriate sanction for the destruction of electronic evidence.  Among those sanctions is the ultimate sanction of a directed verdict, and the lesser sanctions of instructions relating to the evidence that was destroyed. At the heart of the consideration before the Court is the intent of the party destroying the evidence. Intent is clear in this instance. It is not disputed that Mr. Cooper, as he operated the Beacon truck, created a dangerous situation by driving at the speed he did, in the left lane of I-75. Agent Depo, p. 233 l.6-23, attached as Exhibit 6. The destruction was intended to deprive Plaintiff, this Court, and the jury of evidence.  Principal issues of fact in dispute that are material to this Motion because they are impacted by evidence that was intentionally destroyed include:

1.      How many vehicles passed on the right of the Beacon truck as Ms. Noble approached from behind.

2. Whether traffic passing Mr. Cooper on his right was sufficiently spaced that he could have changed lanes prior to this collision safely, as opposed to continuing the road hazard he created by stopping or driving his vehicle between 0-15 miles per hour at the time of the crash in the left lane of travel.

3. What vehicles were in proximity to Ms. Noble's vehicle as she approached.

4. What traffic was ahead of Ms. Noble that would have potentially affected her view of the hazard represented by the Beacon truck blocking her lane of travel.

5. What traffic, if any, prohibited or otherwise affected Ms. Noble's ability to move from the left lane into the right lane of travel to avoid the Beacon truck hazard.

6. Whether Mr. Cooper's hazard lights were activated at the time of the crash should his dash cam or video have captured same or their sound made when blinking.

7. The speed of the Beacon tractor-trailer prior to and at the time of the crash.

8. Movement of the Beacon truck after the crash.

9. Movement of the Noble vehicle after the crash.

10. Ms. Noble's physical condition after the crash.

11. Ms. Noble's mental state after the crash.

12. Whether Ms. Noble displayed signs of pain and suffering after the crash.

13. The duration of Ms. Noble's period of conscious pain and suffering after the crash.

14. The actions of witnesses at the scene after the crash as they comforted Ms. Noble.

15. Mr. Cooper's conduct upon his exiting the vehicle as he photographed and allegedly videotaped the scene, Ms. Noble, and the people who were trying to comfort and aid her prior to her extrication by emergency services personnel.

**I.     This destruction of electronic evidence was intended to deny Plaintiff evidence.**

There is an obvious motive for Beacon and Cooper's destruction of evidence: depriving

Plaintiff of the use of it.  Mr. Cooper's actions at the scene according to witnesses were horrid.

Non-party witnesses Ms. Moore and Ms. Saylor witnessed him videotaping her and others who

were trying to help and pray with Ms. Noble. Such is in Ms. Saylor's KSP statement given the

day of the crash. He kept telling them not to touch Ms. Noble while videotaping. Ms. Moore witnessed him photographing them with his phone camera ***and*** taking video with another camera. <u>Selena Moore Affidavit</u>, P.2 and p. 4 at Docket No. 123-2.  This video evidence would be damning.

As to proof of the existence of the missing electronic information, Mr. Cooper's testimony was that all of his electronics in his truck were downloaded – dash cam, phone, GPS, Qualcomm (Omnitracs), truck ECM/computer. <u>Cooper Depo</u>, p. 59 l. 20 – p. 64 l. 7, attached as Exhibit 7. Beacon Employee Lisa Milom testified that she downloaded photographs from Mr. Cooper's phone on his return from the run. <u>Milom Depo</u>, p. 14 l.18 – p. 17 l. 9, attached as Exhibit 8.  There evidently then appear to have been *two* downloads of the Cooper phone: 1)  the Lisa Milom Download where she pulled pictures from the phone, and 2) evidently a second download coordinated by Counsel Judd. Mr. Judd confirmed at Mr. Cooper's deposition that he participated in a download of the Cooper phone between May and August of 2017.  <u>Cooper Depo</u>, p. 18 l. 18-25, attached as Exhibit 7. [2]

It would seem beyond reasonable comprehension that a nearly *200 unit motor carrier* such as Beacon having primary and excess specialized trucking insurance coverage and the legal assistance accompanying same along with a dedicated Safety Director Mr. Knittel would have failed to do exactly as Mr. Cooper testified and extracted data from everything that could provide it. No electronic "stone" would be unturned. It also unfortunately stands to reason – whether to save a job or just money - that damning evidence captured was purposefully destroyed.

---

[2] This is the case despite that Defendant Cooper claimed that he believed only the Judd-Expert Download was attempted prior to his deposition. <u>Cooper Depo</u>, p. 18 l. 18 – p. 20 l. 8, attached as Exhibit 7.

## II.    All evidence destroyed was specifically demanded to be saved within 30 days.

Plaintiff's February 3, 2017 preservation/anti-spoliation letter was sent to Beacon's Safety Director Jeff Knittel.  It was his job to investigate this crash. He testified for Beacon about his investigation. The letter demanded every piece of evidence that Beacon and/or Mr. Cooper evidently ultimately destroyed.  This included 1) Omnitracs data, 2) dash cam electronic data (digital video with date/time/sound/video) 3) photographic data (pictures with date/time stamp) 4) cell phone data (data that could tell what apps were in use, what pictures and video were taken, provide that picture/video, *etc.*) and  4) the actual cell phone, dash cam, and the Omnitracs computer  from the truck so that they could be examined to see if data was captured, ever deleted and whether it could be recovered. The preservation letter explicitly explained that Ms. Noble's estate demanded every item of evidence in issue preserved and that each were sought for exam:

**This correspondence is a demand that materials pertaining to driver Terran Cooper and this crash be retained and preserved for anticipated litigation to be brought by the Estate of Ms. Noble.  The materials below should be preserved so as to avoid spoliation, and are requested for examination at this time.**

Modern trucks are simply amazing with respect to the data captured in their operation. The Defendants were specifically demanded to preserve <u>as well as to notify suppliers of involved systems such including Omnitracs to save</u> all data from electronics within the truck:

24]    All OmniTRAC, Qualcomm, MVPc, QTRACS, OmniExpress, TruckMail, TrailerTRACS, SensorTRACS, JTRACS, and other similar systems data for the six (6) months prior to the collision for this driver and truck.  **You are hereby notified that you are required to place your supplier of the above system, as your agent, on notice that they are to save this data.**

and

14]     All data in every form  from on-board recording devices and computer systems, including but not limited to the ECM (electronic control module), any on-board computer of any type, tachograph, GPS, trip monitor, trip recorder, trip master or other recording or tracking device for the day of the collision and the six (6) month period preceding the collision for the equipment involved in the collision.

and

32]     Any and all communications via CB radio, mobile or satellite communication systems, email, cellular phone, pager or other in cab communication device to include the bills for the devices for the day before, the day of, and the two days after the collision.

and

34]     Any and all computer, electronic, or e-mail messages created in the first forty eight hours immediately after the incident, by and between the defendant and any agents or third parties relating to the facts, circumstances, or actual investigation of the incident as well as any computer messages which relate to this particular incident, whether generated or received.

Concerning photographs and video, the letter demanded specific preservation of:

10]     Photographs, video, computer generated media, or other recordings of the interior and exterior of vehicles involved in this collision, the collision scene, the occurrence, or relating to any equipment or things originally located at or near the site of the occurrence.

Because of litigation experience in trucking cases involving the intentional spoliation of evidence, Counsel Lange was concerned that materials may be selectively preserved, deleted or destroyed. Because so much information is intentionally deleted or otherwise lost, warning was given and demand made to preserve the *actual storage media* on which data in issue resided – such as Mr. Cooper's phone that Mr. Cooper ultimately reset, "wiping" it of recoverable data:

35]     All electronic documents and the storage media on which they reside which contain relevant, discoverable information beyond that which may be found in printed documents.  Therefore, even where a paper copy exists, we will seek all documents in their electronic form along with information about those documents contained on the media. We also will seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which no corresponding electronic files exist. Our discovery requests will ask for certain data on the hard disks, floppy disks and backup media used in your computers, some of which data are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased is a reference to that file in a table on the hard disk; unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing.

Ignorance cannot be pled earnestly in any defense of this motion. Counsel Judd made similar requests for preservation in his preservation letter of February 9, 2017. It is well known that one should review and save everything from a fatal crash in the trucking industry. The destruction of these materials is contrary to the guidance provided by directives of the Federal Motor Carrier Safety Administration.  FMCSR §379.7 and Appendix A to part 379, Note A states that "companies shall exercise reasonable care in choosing retention periods, and the choice of retention periods shall reflect **past experiences**, company needs, **pending litigation**, and regulatory requirements."  This is not Beacon's first suit; it has *past experience*. It was advised of *pending litigation*. It had Counsel Judd. These materials are fundamental – Omnitracs is mandated used by drivers by Beacon when communicating with it. Video, pictures, phones, cameras are rudimentary items to preserve in a commercial truck crash, especially a fatal crash.

III.     **Plaintiff is materially prejudiced by the destruction of the best evidence of the circumstances of the crash and of Ms. Noble's condition after the crash.**

In addition to the downloads of Mr. Cooper's phone, Mr. Cooper testified that Beacon downloaded his Dashcam, the ECM computer on his truck with trouble codes, his GPS, and that

12

he thought Safety Director Jeff Knittel was present for those downloads.  Cooper Depo, p. 62 l. 20 – p. 64 l. 7, attached as Exhibit 7). No ECM data, Omnitracs data, or Mr. Cooper's personal GPS data was ever produced. Most egregiously, the loss of the video, photographic and phone electronic information has materially damaged the Plaintiff's ability to prove both Beacon/Cooper's liability and Ms. Noble's damages for her pain and suffering.

### A.   Omnitracs electronic messaging information was destroyed.

Mr. Cooper confirmed that his Omnitracs/Qualcomm computer was downloaded on his return. Cooper Depo, at p 60 l. 15-23 and p. 65 l. 1-18, attached at Exhibit 7.  He also confirmed that he used it when he reported this crash to Beacon  (that he coded the crash into his Omnitracs/Qualcomm unit).  Cooper Depo, p. 72, l. 20, attached as Exhibit 7.   Jeff Knittel, Safety Director for Beacon, confirmed that Beacon did not download or preserve the Qualcomm messaging between Cooper and Beacon. Knittel Depo, p. 19 l.4, attached as Exhibit 9.  Some data was downloaded from the Omnitracs unit prior to the meeting with Mr. Cooper upon his return from the crash.  Knittel Depo, p. 55 l. 2-18, attached as Exhibit 9.  **Despite its download by Beacon, no Qualcomm/Omnitracs dispatch communications were ever for the date of this crash or otherwise**.  This was the case although Mr. Knittel had continuing access to that data for at least four months after the crash – which would have included access roughly 90 days after the request for retention to avoid spoliation was made to him directly at Beacon and also known by its counsel. (Knittel Deposition, P 19 L 1- p. 20 l. 18, attached as Exhibit 9.)  Stan Pritchett, an owner of Beacon and designated person to testify as a custodian of records, testified that he reviewed the preservation letter and Mr. Pritchett – testifying as records custodian for Beacon - claimed Jeff Knittel secured the Qualcomm messaging data. Pritchett Depo, p. 39 l.11 - p. 40 l. 7, attached As Exhibit 10. Again, Mr. Knittel denied securing the messaging data.

Plaintiff did not simply rely only on the Defendants to produce the Omnitracs this data either. Subpoena was issued for it from Omnitracs at Docket No. 17.1. Omnitracs responded to the subpoena issued to it that it retained no data from the time period of the crash.  Omnitracs Subpoena Response, attached as Exhibit 4.   Counsel Judd also stated that he did not believe that the Qualcomm data existed as of the date of the Cooper deposition in February of 2018. Cooper Depo, at p. 66 l. 10-24, attached as Exhibit 7.  All was destroyed in time as Beacon intended it would be from Omnitracs' limited retention policy.

Beacon's bad faith is further confirmed in written discovery responses served and filed in the record. At Docket No. 27. the same request was made for production of Omnitracs data in discovery as in the preservation letter (via Document Request No. 24 within Docket No. 27).  No such materials were provided: only improper objection, stating: *Objection. Beacon has no obligation to comply with this request, and it far exceeds the requirements of the Federal Civil Rules as it is onerous, overly broad, unduly burdensome and not geared to obtain relevant information.  Moreover, it amounts to harassment*". The legal imperfections of the foregoing objection being obvious given the applicable Federal standards for discovery, Omnitracs had already destroyed Beacon's dispatch messaging with Mr. Cooper as Beacon knew it had when it answered this request. This is material electronic information because Mr. Cooper reported the crash through Omnitracs. It existed. No Omnitracs messaging data was ever provided. Whatever else Mr. Cooper told Beacon in that communication reporting the crash will never be known. Nor will it be known what communications were had using the Omnitracs before the crash.

### B.    Dashcam Footage was destroyed.

With respect to dashcam footage that also existed, Mr. Cooper confirmed that his dashcam video was running at the time of the crash. He confirmed that it would also have

recorded his voice in the cabin. It shot video forward. It recorded that video with sound. However, when pressed as to what happed to the recording, he claimed that after the download by Beacon and a third party, he was told that "so it was on thou, though. They said nothing was recorded." <u>Cooper Depo</u>, p. 61 l.7 – p. 62 l. 22, attached as Exhibit 7. His "they" is Beacon. It is clear that with the camera on a video that would have included the impact would have recorded, along with the sound of the impact, the traffic ahead of Mr. Cooper, traffic passing Mr. Cooper on the right, potentially his hazard lights as they blinked and made sound, and it would have been the best evidence of Mr. Cooper's speed before and after  the impact in this case. It would have recorded the Noble vehicle potentially, and the vehicles of the responders… Nothing was preserved.

Confirming the scientific assistance this video would have provided as to liability, accident reconstructionist Mr. Joey Stidham testified that forward facing camera footage:

> "[w]ould be huge in this case. One, it would document the speed of the truck. We could get the speed the truck's actually moving from the video.  It would also show if there were any obstructions in front of the truck. It would also show contemporaneously if there were actually vehicle beside the truck. Because if they weren't involved in the collision, you could see them going by the truck".
> (Stidham Deposition, P 52 L 4-18, attached as Exhibit 11.)

While Mr. Cooper waffles and wavers as to what the dashcam may or did not record in his deposition, the reality is that he testified that it was running at impact. It is a fact that he told Jeff Knittel he had that footage on the dash cam.  <u>Knittel Depo</u>, p. 19 l.1 – p. 21 l.17, attached as Exhibit 9. He said it was downloaded. The dashcam digital footage existed.

### C.    Hand held video camera footage was destroyed.

A second, handheld video camera was reported by witness Ms. Moore. Ms. Moore witnessed Mr. Cooper photographing her with his phone camera ***and*** taking video **with another**

15

**camera**. Selena Moore Affidavit, P.2 and p. 4 at Docket No. 123-2.   It is unclear if this is in addition to the forward facing dashcam; perhaps the dashcam was removed to shoot video of the scene. Either way, given Mr. Cooper's reportedly horrid conduct at the scene of this crash, coupled with the description also in Ms. Moore's affidavit as to the last conscious minutes of Ms. Noble's life (gasping for air as Ms. Saylor and she prayed with her awaiting help, urging her to breath) there is true motive why video was maliciously destroyed to deny its use in this litigation.

> **D.     Mr. Cooper's scene pictures were withheld in discovery further evidencing malicious intent leading to the wipe of Mr. Cooper's cell phone.**

The record reflects that only select photographs of Mr. Cooper's truck in the roadway were produced pre-suit, and in response to Plaintiff's document requests.  Pre-suit, the defense provided only ten (10) grainy black and white scanned photo copies of Mr. Cooper's truck on I-75 attached as Exhibit 3.  They were emailed by Counsel Judd to Counsel for the Plaintiff on May 17, 2017 with an email that explained he was sending the "bulk" of documents that were requested, including photographs taken by Mr. Cooper in Exhibit 3. Suit was thereafter filed. The sequence of the production of pictures by the defense in this case is *highly suspect at best* given that they were all taken at one time and possessed by defense counsel between May and August of 2017. Counsel Judd stated in Mr. Cooper's deposition that between May and August of 2017 he attended a "download" of Mr. Cooper's phone that he had conducted by a person he engaged.  Cooper Depo, P 18, L 18-25, attached as Exhibit 7. He attended the download of the phone and secured a CD with pictures only from it. Ultimately those were proven to include pictures taken of Ms. Moore and others aiding Ms. Noble who was within her Jetta. Counsel Judd's download of the Cooper phone contained only selected pictures – and nothing else.

It was in August of 2017 when Plaintiff's Requests for Admission, Interrogatories and Requests for Production of Documents were issued to the Defendants. Mr. Cooper and Beacon were each required to admit or deny that Mr. Cooper took photographs of the Noble vehicle with Ms. Noble within it. <u>Both formally denied doing so on September 7, 2017 in the Cooper and Beacon Responses to Requests for Admissions</u>. *See* Docket No 22 wherein Beacon denies request No. 12 and Docket No. 23 wherein Mr. Cooper denies that he took photographs of the Noble vehicle with her inside of it at No. 12 and taking video at No. 13. The Defendants then again produced only the same grainy black and white photographs in Exhibit 3 on October 17, 2017 when responses were made to the production requests of Plaintiff that had requested them.[3] Despite the denials of specific Requests for Admission and the production of record, Mr. Cooper, Beacon, and defense counsel were each in possession of these pictures taken by Mr. Cooper:



---

[3] Plaintiff's Production Request No. 10 sought "photographs, video, computer generated media, or other recordings of the interior and exterior of vehicles involved in this collision, the collision scene, the occurrence, or relating to any equipment or things originally located at of near the site of the occurrence". The Defendants' each responded with only "See attached Composite A." Attached "Composite A" contained the same 10 gray, grainy photographs provided pre-suit. The discovery productions each contained a sub-file dated March 17, 2017 that had only the grainy Beacon truck damage pictures only produced with the defense responses.

The above photographs only came to light in Mr. Cooper's deposition of February 19, 2018.  It was in that deposition that it was luckily discovered that Mr. Cooper had been prepared for his testimony by Counsel Judd using 16 photographs that Mr. Cooper took of the scene. These included Mr. Cooper's never previously produced pictures of the Good Samaritans attempting to aid Ms. Noble during her recovery before her extrication. And there was more to come - Mr. Cooper went on to testify that he believed that the 16 photographs used to prepare him for his deposition was not a complete set of the pictures he took and that there were more than were produced in his deposition.  Cooper Depo,  p. 32 l. 18- p. 33 l.8, attached as Exhibit 7. Mr. Cooper claimed that he had taken approximately 20 photographs. Cooper Depo, p. 24 ll. 14-25, attached as Exhibit 7.  It was also represented by Counsel Judd that he was 99% certain that the 16 photographs he used to prepare Mr. Cooper for his deposition had been previously produced.  Cooper Depo, p. 26  l. 1-21, attached as Exhibit 7.  However, no pictures of the Noble vehicle or of persons comforting Ms. Noble while she was inside it had. The record created by the defense formally denied their existence at Docket No's 22 and 23.

Next comes the phone examination. Prior to Mr. Cooper's deposition, the parties had agreed that Mr. Cooper's phone would be produced for inspection at his deposition.  An Agreed Protective Order was entered at Docket No. 47 for the phone. ***Upon the much anticipated inspection of Mr. Cooper's phone, it was revealed that Mr. Cooper's phone had been factory reset 11 days earlier, on February 8, 2018.***  This reset was only 6 days after the phone inspection was noticed at Docket No. 39. It is astoundingly brazen and seemingly no coincidence that only six days after the inspection was set, Mr. Cooper factory resets and wipes his phone clean of all data.  Cooper Depo, p. 15 l.19 – p. 19 l. 17, attached as Exhibit 7. Mr. Cooper

appeared to claim he did not know he was supposed to protect his phone since it had been downloaded by Counsel Judd.  Cooper Depo, p. 16 l.14 – p. 18 l. 12., attached as Exhibit 7.

Given the above, during the Cooper deposition Counsel Judd agreed to provide a copy of his "download" that Mr. Cooper had described of his phone. That "download" turned out to be no complete backup or mirror image of the phone's memory, but rather *only selected photographs* cherrypicked from it.  That "download" did fortuitously include the pictures that were previously denied as ever having been taken by Mr. Cooper of Ms. Noble in the Jetta. Importantly as to the intent of the Defendants, the Cooper deposition and Judd "download" established that Mr. Cooper, Beacon and Counsel Judd each had the Noble Jetta photographs when the denials were made of their existence, and the photographs were left out of both the Beacon and Cooper productions. This would appear nothing short of a conspiracy to deny Ms. Noble's estate electronic evidence in this case that was ultimately partially foiled by Mr. Cooper – what was destroyed of other pictures and video will never be known, to Plaintiff's harm.

### E.    Specific evidence destroyed due to the wipe of the phone.

The most blatant destruction of electronic of evidence beyond the Omnitracs data occurred with Mr. Cooper's "wipe" of his phone.[4]  Docket No. 10 contains the report of the Parties' Planning Meeting submitted to the Court.  Paragraph 6(f) of it reported to the Court that the parties needed to download certain electronics, including Mr. Cooper's phone, looking for video reported by witnesses.  Again, Ms. Saylor and Ms. Moore each believe he videotaped them.  On February 2, 2018, Plaintiff filed Docket No. 39, formally noticing the agreed Rule 34 inspection of "all mobile or cellular phones, tablets, laptops, still and or video cameras to which

---

[4] This is the phone which with Mr. Cooper admitted taking scene photographs of Ms. Moore, Ms. Anderson and others at the scene of the crash, at least some of which he emailed to Beacon's Safety Manager on the day of the crash. It was never secured from Mr. Cooper, who continued to use it after the preservation request was made, and then factory reset it.

Defendant Terran Cooper had access on January 5, 2017". (Docket No. 39). Mr. Cooper produced only his cell phone – he did not produce his dash cam or any other camera.

Inspection revealed that Mr. Cooper "wiped" his phone clean of all evidence 6 days after the inspection was noticed on February 7, 2018. See <u>Affidavit of Jason Woods</u>, at Paragraph 4, attached as Exhibit 12.[5] As to exactly what the defense's undisclosed phone "downloader" was to download, Mr. Cooper was asked and explained that Mr. Judd's third party in the presence of Mr. Judd downloaded and copied "***every file on my phone***". <u>Cooper Depo</u>, p.17 l 14-17, attached as Exhibit 7. Mr. Cooper testified that it was his understanding that Beacon did a complete "download" of his phone, and all data on it, when he used the phrase **<u>"every file on my</u> <u>phone"</u>**. <u>Cooper Depo</u>, p. 19 – 20. ll.24 – 1, attached as Exhibit 7. Every file was not produced, much less preserved. Counsel Judd's CD only contained selected picture files – nothing else.

Mr. Jason Woods is a forensic computer consultant engaged by Plaintiff to evaluate Mr. Cooper's phone and the files produced by the defense. Mr. Woods confirms in his attached affidavit that Defendant Cooper's phone had been factory reset on February 7, 2018 at 12:40pm. <u>Woods Affidavit</u>, paragraph 4, attached as Exhibit 12. A factory reset function is intended to remove all user created data and return system settings and applications to their default state. No user data created before February 7, 2018, when Mr. Cooper reset and "wiped" his phone clean, could be recovered. All was intentionally and maliciously destroyed.

Likewise, though Mr. Cooper claimed in his testimony that he understood that the entirety of his phone was "downloaded" with Counsel Judd, Mr. Woods verifies in his affidavit that the DVD disk supplied by Counsel Judd that was supposed to contain a complete backup of the phone did not. Data was truly "cherrypicked" for preservation, or at least for production if

---

[5] That evaluation by Mr. Woods cost the Plaintiff significant sums in expert witness fees only to discover that the phone had been "wiped" with no chance of recovering data from it by Mr. Cooper.

Mr. Cooper is correct as to a full download.  Material items were missing that would have been

available had the entirety of the download been produced according to Mr. Woods included:

> *"After reviewing the files provided, there are several items missing that would be available if the entirety of the Cellebrite extraction would have been produced, including:*
> - List of installed applications,
> - Database files for each application that could contain:
>   - Messages
>   - Photos
>   - Video
>   - Audio
>   - Timestamp data
>   - Location data
> - Cellular Voice Usage
> - SMS(Text) Messages
> - MMS(Media Messages)
> - Voicemail
> - Email
> - Cellular Data Usage
> - Photos
> - Video
> - Audio
> - Documents
> - Web browsing history
> -  Location/GPS data that may include:
>   - Maps and Routes searched and taken
>   - Stops made on these routes
>   - Total time and distances traveled per route
> - Metadata from all files recovered that could include:
>   - Date and time created
>   - Date and time modified
>   - Thumbnails for photo and video
>   - Author of documents
> -  Cellbrite generated data that would be used to verify the results of the extraction and examination including:
>   - A forensic image of the device data
>   - Cryptographic hashes necessary to verify the integrity of the recovered data
>   - Forensic report of the relevant data
>   - Presentation of a "Timeline" that aggregates the timestamps of files and events on the device in chronological order.
> - Battery usage

- Power events (Turning the phone off and on or battery use of applications"
  Affidavit of Jason Woods, Pages 2-3, attached as Exhibit 13.

**F.     Material electronic evidence was intentionally and maliciously destroyed to deny it to the Plaintiff, the Court, and the Jury warranting severe sanction under Rule 37(e)2.**

The Court may sanction a party for failing to preserve relevant electronically stored information ("ESI") under Rule 37(e).  Rule 37(e) states in its entirety:

**(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1)     upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2)     only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Given their pattern of conduct shown above, Mr. Cooper and Beacon's conduct is clearly in need of the most severe of sanctions by the Court under Rule 37(e)(2).  Theirs is a pervasive pattern of the intentional suppression of information due the Plaintiffs, coupled with the intentional and malicious destruction of material evidence that has been proven to have existed while they were obligated to preserve it. Rule 37(e) was amended in 2015 to address this very

22

conduct. According to the comments following the Rule, the Court must look at the reasonableness of the actions of these Defendants as to the efforts taken to preserve the Omnitracs data. Neither Mr. Cooper, Beacon, or their counsel's actions on their behalf were reasonable: Omnitracs data could have been preserved with a click of Mr. Knittel's computer keyboard, with a print-out of the website he checked or from the Unit Beacon downloaded...  Mr. Cooper's phone could have been preserved by securing it in a safe as Plaintiff did with Ms. Noble's phone.  A mirror back-up of it also could have been obtained.  The dash and handheld video camera's could have had mirror back-ups performed, and gone in that same safe given that this is a death case.  None of this occurred. Cameras were not produced. Mr. Cooper purposefully reset his phone…

The electronic information lost as a result of the misconduct of these Defendants cannot be replaced. It was material evidence. Spoliation of it occurred. Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Material evidence is that which is "relevant and probative," and has a determinative impact on the outcome of a matter. See e.g., Caulder v. Bowen, 791, F.2d 872, 877 (11th Cir. 1986); Calhoun v. Colvin, 2014 U.S. Dist.LEXIS 118822, *13 (E.D.N.C. 2014); Greene v. Astrue, 2011 U.S. Dist. LEXIS 73515, *10 (D.Kan. 2011) ("[E]vidence is material if it bears directly and substantially on the matter in dispute"). Plaintiff was materially prejudiced as a result of these Defendants' malicious conduct, as the records shows was intended, with the destruction of evidence from Mr. Cooper's phone, his dash cam, his video camera, and Beacon's Omnitracs communications.

This malicious, bad faith and deliberate malfeasance by both corporate personnel at Beacon and Mr. Cooper, in complicity, documented in the record of this case, justifies an Order of severe sanctions under Rule 37(e)(2) against these Defendants. That Order should be tailored to remedy specific issues that the conduct affected: 1) Beacon's legal liability and 2) Ms. Noble's damages for her pain and suffering before her death.  The electronic information that should have been preserved and produced by both Defendants frankly would have been the best evidence of the case as to how the crash occurred and what Ms. Noble experienced afterwards before succumbing to her injuries.

 It is respectfully requested that the Court Order sanctions directing a verdict as to the liability of the Defendants for this crash and further directing a verdict that Ms. Noble experienced conscious pain and suffering as a result of her fatal injuries sustained in it.  In the alternative should the Court find these remedies inappropriate in its discretion, the Court is petitioned to sanction Beacon and Mr. Cooper with instructions to the jury that it must presume that the destroyed information was unfavorable to Beacon and to Mr. Cooper with respect to Beacon's liability for causing the crash, and that it must be presumed also that the information destroyed was unfavorable to them both with respect to the award that the jury may provide for Ms. Noble's conscious pain and suffering prior to her death.  There is no excuse permissible for this blatant, unfair, malicious destruction of material evidence.  The court is further requested to consider and make an award of attorney fees and costs pertaining to this motion and the quest for the evidence that was destroyed. The conduct of these parties is egregious, and blatantly contemptuous of the judicial system and the Rules of Court.

Respectfully submitted,


  /s/Timothy D. Lange_____
Timothy D. Lange
BENSON, RISCH & LANGE, PLLC
401 W. Main Street, Suite 2150
Louisville, Kentucky 40202
Telephone: (502) 583-8373

D. Randall Jewell
JEWELL LAW OFFICE, PLLC
P.O. Drawer 670
Barbourville, Kentucky 40906
Telephone:  (606) 546-9714

Billy J. Taylor
TAYLOR LAW OFFICE, PLLC
110 Knox Street, Suite A
Barbourville, Kentucky 40906
Telephone:  (606) 545-0224

ATTORNEYS FOR PLAINTIFF



## CERTIFICATE

It is hereby certified that on the foregoing was filed January 31, 2019 with the Clerk of

the Court by using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record.


/s/   Timothy D. Lange
TIMOTHY D. LANGE