UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON
CA NO.: 6:17-157-KKC


DAVID WILSON, as Administrator
of the Estate of Lisa Noble,
Deceased                                    PLAINTIFF


VS.


BEACON TRANSPORT, LLC
AND TERRAN COOPER                           DEFENDANTS


DEPONENT:   TERRAN COOPER

DATE:       FEBRUARY 19, 2018

**EXHIBIT**

F

Terran Cooper      February 19, 2018



TERRAN COOPER

FEBRUARY 19, 2018

Terran Cooper    February 19, 2018

```
1

2                    A P P E A R A N C E S

3

4    COUNSEL FOR PLAINTIFF, DAVID WILSON, as
     Administrator of the Estate of Lisa Noble,
5    Deceased:

6

7    Timothy D. Lange, Esq.

8    BENSON, RISCH & LANGE, PLLC

9    401 West Main Street

10   Suite 2150

11   Louisville, Kentucky 40202

12   Telephone:  (502) 583-8373

13   Facsimile:  (502) 584-8929

14   email:  tlange@timlange.com

15

16

17   CO-COUNSEL FOR PLAINTIFF, DAVID WILSON, as
     Administrator of the Estate of Lisa Noble,
18   Deceased:

19

20   D. Randall Jewell, Esq.

21   138 Court Square

22   Barbourville, Kentucky 40906

23   Telephone:  (606) 546-9714

24   Facsimile:  (606) 546-4683

25   email:  randy@randyjewell.com
```

1

2                     A P P E A R A N C E S

3

4    COUNSEL FOR DEFENDANTS, BEACON TRANSPORT, LLC
     AND TERRAN COOPER:

5

6    Harlan E. Judd, III, Esq.

7    HARLAN E. JUDD & ASSOCIATES, P.S.C.

8    869 Broadway Avenue

9    Bowling Green, Kentucky 42104

10   Telephone:  (270) 904-4141

11   email:  harlanjuddlaw@gmail.com

12

13

14   Videography Provided By:

15

16   Mable Barnes

17   Action Court Reporters

18   116 Mechanic Street

19   Lexington, Kentucky 40507

20   Telephone:  (859) 252-4004

21   Facsimile:  (859) 252-4221

22   email:  action@iglou.com

23

24

25

Terran Cooper    February 19, 2018

I N D E X

                                                    PAGE

Color picture of deponent                           2

Appearances                                         3

Index                                               5

Exhibits                                            6

Requests                                            9

Stipulations                                        10

Video Introduction                                  11

Examination by Mr. Lange                            13

Examination by Mr. Judd                             269

Court Reporter's Certificate                        271

Terran Cooper    February 19, 2018

1

2                          E X H I B I T S

3

4                                                          PAGE

5

6    Exhibit 1                                      21
     (Summons and Complaint)
7
     Exhibit 2                                      23
8    (Responses to Interrogatories)

9    Exhibit 3                                      25
     (Photographs)
10
     Exhibit 4                                      32
11   (Photographs)

12   Exhibit 5                                      34
     (Photographs)
13
     Exhibit 6                                      42
14   (Previous Employer Checklist,
     Bates-stamped Estate of Lisa Noble
15   000023)

16   Exhibit 7                                      50
     (Beacon Application for Employment,
17   Bates-stamped Estate of Lisa Noble
     000061 to 000067)
18
     Exhibit 8                                      53
19   (Phone App,
     Bates-stamped Estate of Lisa Noble
20   000046)

21   Exhibit 9                                      74
     (Qualcomm Messaging,
22   Bates-stamped Estate of Lisa Noble
     000235)
23
     Exhibit 10                                     74
24   (Email,
     Bates-stamped Estate of Lisa Noble
25   000401 to 000403)

Terran Cooper     February 19, 2018

```
 1
 2                    E X H I B I T S
 3
 4                                              PAGE
 5
```

Exhibit 11                                        80
(Cost of Accident Damage,
Bates-stamped Estate of Lisa Noble
000090)

Exhibit 12                                        83
(Driver Policy and Procedure Manual,
Bates-stamped Estate of Lisa Noble
000217)

Exhibit 13                                        84
(Record of Corrective Action,
Bates-stamped Estate of Lisa Noble
000098)

Exhibit 14                                        87
(Written Warning,
Bates-stamped Estate of Lisa Noble
000091 to 000093)

Exhibit 15                                        90
(Incident Report,
Bates-stamped Estate of Lisa Noble
000100 and 000101)

Exhibit 16                                        111
(Record of Corrective Action,
Bates-stamped Estate of Lisa Noble
000094)

Exhibit 17                                        115
(Page from Manual, Personal Belongings,
Bates-stamped Estate of Lisa Noble
000234)

Exhibit 18                                        118
(Page from Manual, Safety Requirements,
Bates-stamped Estate of Lisa Noble
000242)

Terran Cooper    February 19, 2018

1

2                      E X H I B I T S

3

4                                                        PAGE

5

6    Exhibit 19                                          120
     (Quick Trip Report,
7    Bates-stamped Estate of Lisa Noble
     000105 to 000107)

8
     Exhibit 20                                          143
9    (Photograph)

10   Exhibit 21                                          146
     (Photograph)

11
     Exhibit 22                                          149
12   (Driver Log,
     Bates-stamped Estate of Lisa Noble
13   000157 to 000169)

14   Exhibit 23                                          156
     (Invoice,
15   Bates-stamped Estate of Lisa Noble
     000267 and 000268)

16
     Exhibit 24                                          237
17   (Accidents & Reporting,
     Bates-stamped Estate of Lisa Noble
18   000243)

19   Exhibit 25                                          264
     (Bill of Lading,
20   Bates-stamped Estate of Lisa Noble
     000408)

21
     Exhibit 26                                          267
22   (Copy of Driver's License)

23   Exhibit 27                                          267
     (Copy of Medical Card)
24

25

Video Court Reporting Services, Inc.   502.561.9988   depo@vcrslou.com

Terran Cooper     February 19, 2018

1

2                          R E Q U E S T S

3

4    BY MR. LANGE:

5

6                                                    PAGE

7

8    Name of independent third-party
     expert who downloaded information          19
9

     The original color files of photographs
10   be retained on each of those and for a
     duplicate copy of that original file
11   in whatever format it's naturally in       26

12   Qualcomm messaging                          65

13   The Qualcomm messaging, including the
     coded message that an accident occurred    73
14

     Download of the Garmin GPS device
15   that was made                              78

16   Emails be produced between safety and
     Mr. Cooper, along with any attachments     101
17

     Qualcomm message stating in accident      103
18

     All data that could be generated with
19   the quick trip report and every other
     bit of Qualcomm data that was preserved
20   relating to the tractor that Mr. Cooper
     operated                                   119
21

     The logs that run through the end
22   of the trip                                236

23   All available data out there on
     Qualcomm for Mr. Cooper's C-o-o-t-e
24   Qualcomm login.  And if that's not
     the correct login, whatever his was,
25   including messaging and macros             257

Terran Cooper      February 19, 2018

1

2                    S T I P U L A T I O N S

3

4        The video deposition of TERRAN COOPER was

5  taken pursuant to Notice at the offices of

6  Benson, Risch & Lange, PLLC, located at 401 West

7  Main Street, Suite 2150, Louisville, Kentucky

8  40202, on Monday, February 19, 2018.  Said

9  deposition was taken for the purposes of

10  discovery, to be used in accordance with the

11  Federal Rules of Civil Procedure.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Terran Cooper    February 19, 2018

```
1
2                        PROCEEDINGS
3
4              TERRAN COOPER, called by the
5    Plaintiff, David Wilson, as Administrator of the
6    Estate of Lisa Noble, Deceased, having been
7    first duly sworn, was examined and deposed as
8    follows:
9
10                    *     *     *
11                    EXAMINATION
12   BY MR. LANGE:
13        Q.      Good morning, sir.  Even though we
14   met just before the deposition, would you mind
15   stating your full name, please, for the record?
16        A.      Terran Cooper.
17        Q.      And what is your current
18   residential address?
19        A.      325 South Oak Street, Suite 101,
20   Winchester, Indiana 47394.
21        Q.      And we'll redact this from the
22   depo, but what's your date of birth?
23        A.                   (redacted by the
24   reporter).
25        Q.   \  And your Social?
```

Terran Cooper     February 19, 2018

 1        A.                    (redacted by the
 2   reporter).
 3        Q.        Thank you.  Have you ever given a
 4   deposition before?
 5        A.        No.
 6        Q.        All right.  Well -- and you had
 7   time to meet with your attorney this morning, I
 8   presume?
 9        A.        Yes.
10        Q.        One of the things that, you know,
11   we don't try to do is make folks suffer for
12   bathroom breaks and things like that, so if you
13   need a bathroom break, just let your attorney
14   know, and we can work that out.
15               Sometimes we might want to have a
16   question answered before we would break, but we
17   try to keep it kind of easy.
18               Sometimes I will ask a question
19   that's not entirely clear.  If I do that and you
20   don't understand it, will you ask me to clarify
21   my question?
22        A.        Yes.
23        Q.        Okay.  Otherwise, if you answer a
24   question, is it safe to assume that you
25   understood the question asked?

Terran Cooper    February 19, 2018

1      A.      Yes.

2      Q.      Okay.   Throughout the course of the

3  deposition, sometimes it gets kind of informal,

4  and it's easy to slip into a -- other than a yes

5  or no.

6              I know you're former military, so

7  you probably won't have this problem.   But

8  sometimes folks say uh-huh or uh-uh, which makes

9  it very hard for the transcriptionist to get

10 that right sometimes.   So please try to use yes,

11 no, instead of uh-huh or uh-uh.

12             Are you on any sort of medication

13 today that would affect your ability to answer

14 my questions?

15     A.      No.

16     Q.      Okay.   Are you on any medications

17 today?

18     A.      No.

19     Q.      We had some conversation prior to

20 the deposition today about your cell phone.   And

21 what is the phone number for that cell phone?

22     A.      (317) 512-8059.

23     Q.      And is that the same cell phone

24 that you had in the truck with you on January

25 5th, 2017 in this crash?

Terran Cooper    February 19, 2018

```
1         A.      Yes.
2         Q.      Was that the only cell phone that
3   you had with you at the time of this crash?
4         A.      Yes.
5         Q.      Was there any company cell phone
6   issued to you by Beacon?
7         A.      No.
8         Q.      Okay.  So this was your personal
9   cell phone?
10        A.      Personal and business.
11        Q.      Okay.  And this is the same cell
12  phone that you brought with you today?
13        A.      Yes.
14        Q.      All right.  We tried to evaluate
15  that cell phone, and evidently it was factory
16  reset this month.
17                Do you know how that factory reset
18  occurred?
19        A.      Yes.
20        Q.      How did that happen?
21        A.      I did it.
22        Q.      Why did you --
23        A.      And company did it.
24        Q.      Why did you do that?
25        A.      Other files.  There's a different
```

Terran Cooper    February 19, 2018

1  file that was issued to me.

2      Q.      Okay.  So why did you delete the

3  data that we'd asked you to preserve in this

4  case that related to the January 5th, 2017 crash

5  with Ms. Noble involved?

6      A.      I wasn't informed to inform -- to

7  save that data, because that data was saved

8  prior to me coming here from an -- from another

9  company I was working for.

10     Q.      Okay.  What company was that?

11     A.      Beacon Transport.

12     Q.      Okay.  Explain to me the process by

13 which Beacon saved that information, please.

14     A.      By computer.  I'm not familiar with

15 the terminology on how they saved it, but they

16 put a disc into the computer and copied every

17 file on my phone.

18            And there was a computer guy.  I

19 don't know the terminology of his -- name of his

20 profession, but this other guy that was here

21 performed the same duties the other guy did.

22     Q.      Okay.  So someone from -- was that

23 a Beacon employee?

24     A.      I don't know, sir.

25     Q.      Okay.  Who was present when that

1   happened?

2          A.       My lawyer.

3          Q.       Okay.   Is that Mr. --

4          A.       Judd.

5          Q.       -- Judd here today?

6          A.       Yes.

7          Q.       Okay.   Was anyone else present when

8   that occurred?

9          A.       Yes.   The guy who downloaded the

10  information.   And I don't know her name, the

11  other guy -- the other lady that was working

12  there.

13         Q.       Okay.

14                  MR. JUDD:   Are you looking for a

15  response from me, so we can clarify this?

16                  MR. LANGE:   I can follow up or if

17  you know who else was there.

18                  MR. JUDD:   Tim, as I indicated

19  before we took a break for lunch, I had a guy

20  come down and download Mr. Cooper's phone

21  sometime during 2017 between May and August, I

22  believe.

23                  I don't mind to make that download

24  available to you.   We're happy to do that.   He

25  was an independent third-party expert that I

19

Terran Cooper   February 19, 2018

1    utilized.

2              MR. LANGE:  Who is it?

3              MR. JUDD:  I can probably get my

4    phone out and dig around and see what the guy's

5    name is.  He was out of Knoxville, Tennessee.

6              MR. LANGE:  Well, if you would just

7    supplement that --

8              MR. JUDD:  Okay.

9              MR. LANGE:  -- with a -- need to.

10   But I think it -- if that's the only copy, we

11   need to run that to ground and to get --

12             MR. JUDD:  Okay.

13             MR. LANGE:  -- it, please, so we

14   don't have to request it.

15             MR. JUDD:  I don't have any problem

16   turning that over to you at all.

17             MR. LANGE:  Okay.  Thank you.

18

19              *      *      *

20             CONTINUING EXAMINATION

21   BY MR. LANGE:

22       Q.    Was it your understanding that that

23   was a complete download of your phone?

24       A.    Yes.

25       Q.    Okay.  All the data on it?

Terran Cooper     February 19, 2018

1              MR. LANGE:  We'll mark this as

2    Exhibit Number 2, please.

3              (Whereupon, the referred to

4              document was marked as Exhibit 2,

5              and is attached hereto and made a

6              part hereof.)

7        Q.     Did you review any photographs in

8    preparation for your deposition?

9        A.     Yes.

10       Q.     What pictures did you look at?

11       A.     The lawyer -- my lawyer gave me,

12   Mr. Judd, Attorney Judd.

13       Q.     Okay.  Were there pictures of your

14   truck?

15       A.     Accident scene and truck.

16       Q.     Okay.  Were there pictures of

17   Ms. Noble's vehicle?

18       A.     Yes.

19       Q.     Okay.  And did you look at those

20   this morning?

21       A.     Yes.

22       Q.     Okay.  Were those pictures that

23   you'd taken?

24       A.     Yes.

25       Q.     Okay.  Did you take pictures of

Terran Cooper    February 19, 2018

1  Ms. Noble's vehicle and the truck?

2      A.      Yes.

3      Q.      Okay.  Did you take pictures of

4  Ms. Noble?

5      A.      No.

6      Q.      Okay.  When did you take pictures

7  of her vehicle?

8      A.      Immediately.

9      Q.      Okay.  Right after the crash?

10     A.      There's steps I had to take

11  before --

12     Q.      Okay.

13     A.      -- I took pictures.

14     Q.      So when you got out of your truck,

15  did you use your camera phone to do that?

16     A.      Yes.

17     Q.      Okay.  And was that the phone that

18  you produced today?

19     A.      Yes.

20     Q.      Okay.  Did you take any movies?

21     A.      No.

22     Q.      Okay.  Just still photographs?

23     A.      Still photographs.

24     Q.      How many photographs did you take?

25     A.      Approximately 20.

1  that you've taken be better pictures of her in

2  the vehicle?

3      A.      I did not take any pictures of

4  Ms. Noble.  It's not proper.

5      Q.      Okay.

6              MR. LANGE:  And I think we've got

7  the second set coming in of pictures we'll mark

8  -- and this is the original, Mr. Judd -- Number

9  5 to this deposition.

10             (Whereupon, the referred to

11             document was marked as Exhibit 5,

12             and is attached hereto and made a

13             part hereof.)

14     Q.      And is it the case, Mr. Cooper,

15  that these are not photographs that you took in

16  Exhibit Number 5?

17     A.      No, sir.

18     Q.      Okay.  Other than looking at

19  photographs and what we've talked about already,

20  did you look at any other documents to prepare

21  for your deposition today?

22     A.      No, sir.

23     Q.      Did you listen to any recordings?

24     A.      No, sir.

25     Q.      Did you watch any videos?

Terran Cooper    February 19, 2018

```
 1          A.      Which one?

 2          Q.      Which camera did they download?

 3          A.      My --

 4          Q.      Dash cam?

 5          A.      Dash cam.

 6          Q.      Okay.  What kind of dash cam did it

 7   have, was it only a forward dash cam?

 8          A.      A forward dash cam.

 9          Q.      Was it on at the time of this

10   crash?

11          A.      Yes, it was.

12          Q.      Okay.

13          A.      It didn't record nothing.

14          Q.      But was it actually running tape at

15   the time of the crash?

16          A.      Yes.

17          Q.      So would it have recorded your

18   voice, for instance, if you were in the cabin

19   and you reacted to it or the sound of it?

20          A.      Yes.

21          Q.      But it was looking forward --

22          A.      Forward.

23          Q.      -- not looking back?

24          A.      Not looking back.

25          Q.      Did you ever review that dash cam
```

1  footage?

2        A.      You're asking me?

3        Q.      Did you see it?

4        A.      Yes.   There was nothing on there.

5  It didn't record nothing.

6        Q.      Okay.   But could you see the side

7  angle view of Ms. Noble's vehicle where it came

8  to rest?

9        A.      No.   Basically it didn't record it.

10        Q.      Okay.   Did it capture the

11  responding personnel when they came, you know,

12  the EMS, fire, the witnesses running up, that

13  kind of thing?

14        A.      I'm not sure, because after that,

15  basically, I'm sure -- they didn't -- a GP --

16  the recording didn't record anything, that's

17  what they told me.

18        Q.      Okay.

19        A.      So -- it was on, though.   They said

20  nothing was recorded.

21        Q.      But you actually saw the video of

22  it?

23        A.      No.   There was no video, no

24  pictures whatsoever.

25        Q.      Okay.

Terran Cooper    February 19, 2018

```
 1        A.      That I know of.
 2        Q.      Did it have anything beyond a
 3   forward view and side view --
 4        A.      Just a forward view.
 5        Q.      -- rearview?
 6                Would it record -- you know, some
 7   guys don't like it, because it's like having big
 8   brother in the truck, but would it record your
 9   face?  Could they --
10        A.      No.
11        Q.      -- see you?
12        A.      Just forward view.
13        Q.      Okay.  What other equipment did
14   they download from the truck?
15        A.      My GPS.
16        Q.      And the GPS, is that a stand-alone
17   unit GPS or --
18        A.      Stand-alone.
19        Q.      Okay.  And who downloaded that?
20        A.      The same personnel the company
21   hired.  I'm not really sure who that personnel
22   was, but that personnel came out there and did
23   an inspection of the whole truck.
24        Q.      Was Mr. Judd there with you?
25        A.      No.
```

Terran Cooper    February 19, 2018

```
 1                    THE COURT REPORTER:  Uh-huh.
 2                    (Whereupon, the referred to
 3                    document was marked as Exhibit 9,
 4                    and is attached hereto and made a
 5                    part hereof.)
 6                    MR. LANGE:  So 10 will be this
 7   email.
 8                    THE COURT REPORTER:  Let me just
 9   put this sticker on there.
10                    (Whereupon, the referred to
11                    document was marked as Exhibit 10,
12                    and is attached hereto and made a
13                    part hereof.)
14        Q.        And it looks like this is an email
15   from Randy Cummins, director of operations.  And
16   it says, "Serious accident this morning in
17   Corbin, Kentucky involving Laurens to Wilmington
18   Load B271236.  Terran stated that he was in the
19   left lane looking to move over to the right,
20   going up incline when elderly lady hit the right
21   rear side of the -- right rear of the trailer."
22                    Did you tell Randy Cummins that?
23        A.        Tell him what?
24        Q.        That you were in the left lane
25   looking to move over to the right going up an
```

Terran Cooper    February 19, 2018

1   incline when an elderly lady hit the right rear
2   of the trailer?
3        A.      Yes.
4        Q.      Okay.   And who is Randy Cummins?
5        A.      Randy Cummins basically is my boss.
6        Q.      Okay.   So when you called in, you
7   spoke to your boss, Randy Cummins, from the
8   scene of the crash?
9        A.      I don't know.   All I know I talked
10  with safety.
11       Q.      Okay.   At the point that you called
12  in, had you already taken your photographs?
13       A.      When I called in?   No.   No photos
14  were taken at that time.
15       Q.      Okay.   So you hadn't got out of
16  your truck by the time that you called in?
17       A.      No.
18       Q.      Okay.
19       A.      I had to follow procedures.
20       Q.      All right.   Did you tell Randy that
21  Ms. Noble was taken to the hospital with
22  serious, but appear non-life-threatening
23  injuries?
24       A.      No, I did not.
25       Q.      Do you know how that information

Terran Cooper     February 19, 2018

```
1    got in this email?
2         A.      I don't know.
3         Q.      Okay.  Did you tell the Kentucky
4    State Police that you were taken to the hospital
5    for the blood test and that you passed?
6         A.      Yes.
7         Q.      All righty.
8         A.      That's a -- that is a requirement.
9         Q.      It looks like this memo says, "Was
10   instructed to not break the seal for any reason.
11   We will have to get trailer repaired when empty
12   after dropping at Wilmington."
13              Is that what they told you?
14        A.      No.  Procedure is, once I was
15   released by the inspecting officer,
16   automatically my duties are to repair the
17   trailer and get it signed off on.
18        Q.      Did they tell you where to take it?
19        A.      No.
20        Q.      How did you know where to go?
21        A.      Every truck stop has a repair shop,
22   basically.  I was in Corbin, Kentucky.
23        Q.      Are you able to look that up on
24   your GPS device?  Will it tell you where the
25   next one is?
```

Terran Cooper    February 19, 2018

1        Q.      Okay.

2                MR. LANGE:  So I'd also like to

3    request the download of the Garmin GPS device

4    that was made.

5                Can you keep a list of these as

6    we're going along on the requests?

7                MR. JUDD:  I hope so.

8                MR. LANGE:  I forgot to ask you

9    that.  Otherwise --

10               THE COURT REPORTER:  Yes.

11               MR. LANGE:  -- I have to go back

12   and try to re-create it myself.

13

14                   *       *       *

15               CONTINUING EXAMINATION

16   BY MR. LANGE:

17       Q.      Did you only speak with one person

18   when you called in from the crash scene at

19   Beacon?

20       A.      No.  I'm required to talk to three

21   people.

22       Q.      Do you know any names of the folks

23   you talked to?

24       A.      No, I don't.  I know titles.

25       Q.      Okay.

Terran Cooper    February 19, 2018

```
1        Q.      All right.  And was that procedure
2   mandatory?
3        A.      Yes, it was.
4        Q.      So we've got some documents that
5   are a part of, evidently, your personnel file.
6   And I'm going to walk you through these.  I
7   don't do it to embarrass you, you know, but
8   they're write-ups at work or whatnot, so...
9                MR. LANGE:  Let me hand you what
10  we'll mark as Exhibit Number 13.
11               (Whereupon, the referred to
12               document was marked as Exhibit 13,
13               and is attached hereto and made a
14               part hereof.)
15               MR. LANGE:  And there's one for
16  your counsel too.
17       Q.      This is a document, Estate of Lisa
18  Noble 98, and it talks about an accident of --
19  written warning from Billy Jo's board on the
20  action.
21               Do you know who Billy Jo is?
22       A.      Billy Jo is my driver manager.
23       Q.      Okay.  Did you talk to Billy Jo on
24  the day of this crash?
25       A.      First response is to call your
```

85

Terran Cooper    February 19, 2018

```
 1  drivers manager.
 2       Q.    Okay.  So from the scene of the
 3  accident, was Billy one of the people you spoke
 4  to?
 5       A.    Yes, it was.
 6       Q.    And was he your dispatcher?
 7       A.    She.
 8       Q.    Billy.  I'm sorry.
 9             Was Billy your dispatcher?
10       A.    Yes, she was.
11       Q.    All right.
12             MR. JUDD:  Tim, I'm sorry to
13  interrupt, but do I have the right document?
14  You used the word crash, and then this is --
15  whatever this document is is dealing with...
16             MR. LANGE:  Oh.  Well, I probably
17  misspoke with the word crash.
18             MR. JUDD:  Okay.
19             MR. LANGE:  I mean, what I was
20  talking about, from the scene of the crash with
21  Ms. Noble, when he called, did he speak to
22  Billy Jo.
23             MR. JUDD:  Oh, okay.  Sorry.
24       A.    Can I say something?
25       Q.    Sure.
```

Terran Cooper    February 19, 2018

1    Q.    Yeah.

2    A.    You can see it on here.    360

3  degrees, front, back.

4         MR. LANGE:   Let me hand you what

5  we'll mark as Exhibit Number 21 to this

6  photograph -- or to this deposition.

7              (Whereupon, the referred to

8              document was marked as Exhibit 21,

9              and is attached hereto and made a

10             part hereof.)

11   Q.    It's a photograph depicting some

12 ladies around Ms. Noble's car.

13   A.    Uh-huh.

14   Q.    Where did those ladies come from?

15   A.    I have no idea, sir.

16   Q.    Okay.

17   A.    These are people I don't know who

18 they are.

19   Q.    And were they the people that were

20 there comforting Ms. Noble?

21   A.    I believe so.

22   Q.    Okay.  And do you know what vehicle

23 they pulled up in?

24   A.    No, sir, I do not.

25   Q.    Okay.  Do you have any reason to

Terran Cooper    February 19, 2018

```
 1  STATE OF KENTUCKY  )
                       )   SS.
 2  COUNTY OF JEFFERSON)
```

 3          I, Kallie Williams, a Notary Public

 4  within and for the State at Large, do hereby

 5  certify that the foregoing deposition was taken

 6  before me at the time and place and for the

 7  purpose in the caption stated; that the witness

 8  was first duly sworn to tell the truth, the

 9  whole truth and nothing but the truth; that the

10  deposition was reduced to machine shorthand by

11  me in the presence of the witness; that the

12  foregoing is a full, true and correct transcript

13  of my stenographic notes; that there was no

14  request that the witness read and sign this

15  deposition; that the appearances were as stated

16  in the caption.

17

18          WITNESS MY SIGNATURE this 23rd day of

19  February, 2018.

20          My commission expires February 2,

21  2019.

22

23          Kallie Williams
            Court Reporter - Kentucky
24          Notary Public, State At Large

25  KW/

Video Court Reporting Services, Inc.   502.561.9988   depo@vcrslou.com

